UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATIANA MARCU, | No. 2:12-cv-1299 CKD |
| Plaintiff, | |
| v. | <u>ORDER</u> |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

<u>BACKGROUND</u>

Plaintiff, born January 13, 1964, applied on January 23, 2009 for SSI, alleging disability beginning June 1, 2005. Administrative Transcript ("AT") 123-131. Plaintiff alleged she was unable to work due to back and body pain, mental fatigue, nervousness and anxiety. AT 176-179,

/////

/////

186. In a decision dated October 27, 2010, the ALJ determined that plaintiff was not disabled.[1]

AT 12-23. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant has not engaged in substantial gainful activity since January 23, 2009, the application date.
>
> 2. The claimant has the following severe impairments: back pain secondary to musculoskeletal strain and scoliosis; fibromyalgia; depressive disorder without agoraphobia; and borderline intellectual functioning.
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

    4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined [in the regulations] except: she can lift 10 pounds frequently and 20 pounds occasionally; she can stand and/or walk for 6 hours in an 8-hour workday, with normal breaks; she can sit for 6 hours in an 8-hour workday, with normal breaks; she can bend and stoop occasionally; and she can perform simple 1- to 2-step tasks.

    5. The claimant has no past relevant work.

    6. The claimant was born on January 13, 1964 and was 45 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

    7. The claimant is illiterate and is able to communicate in English.

    8. Transferability of job skills is not an issue in this case because the claimant does not have past relevant work.

    9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

    10. The claimant has not been under a disability, as defined in the Social Security Act, since January 23, 2009, the date the application was filed.

AT 14-22.

## ISSUES PRESENTED

Plaintiff argues that the ALJ improperly analyzed plaintiff's mental impairments, improperly assessed the opinions of the examining and treating physicians, and improperly relied on the testimony of a vocational expert.

## LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

1  ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).
2  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one
3  rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

4      The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th
5  Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's
6  conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not
7  affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see
8  also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the
9  administrative findings, or if there is conflicting evidence supporting a finding of either disability
10 or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,
11 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in
12 weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

13 ANALYSIS
14     A. Mental Impairment
15     Plaintiff contends that the ALJ failed to properly evaluate plaintiff's mental impairments,
16 and that in so doing, improperly failed to incorporate sufficient mental limitations in the residual
17 functional capacity. At step two of the sequential evaluation, the ALJ found plaintiff had severe
18 mental impairments, including depressive disorder, generalized anxiety disorder, panic disorder
19 without agoraphobia and borderline intellectual functioning. AT 14. In assessing plaintiff's
20 mental impairments at step three, the ALJ found plaintiff has moderate difficulties in maintaining
21 concentration, persistence, or pace. AT 16. The ALJ's assessment of plaintiff's mental residual
22 functional capacity limited plaintiff to simple 1- and 2-step tasks. AT 17. Plaintiff contends this
23 limitation does not properly account for the mental limitations evident in the record.
24     Plaintiff's argument is unavailing. The record medical evidence supports the ALJ's
25 conclusion that plaintiff could perform simple 1- and 2-step tasks. The consultative
26 psychological examiner, Dr. Richwerger, opined that plaintiff had no impairment in her ability to
27 perform simple and repetitive tasks, had only slight impairment in most of the mental functional
28 areas, moderate impairment in her ability to complete a normal workday, and marked impairment

4

in her ability to perform detailed and complex tasks.  AT 231.  Detailed tasks were not within the residual functional capacity assessed by the ALJ.  The only moderate impairment assessed by Dr. Richwerger, as explained below, was properly reflected in the hypotheticals posed to the vocational expert.  The remaining limitations assessed by Dr. Richwerger, including his assessment of plaintiff as having borderline intellectual functioning,[2] are in accord with the residual functional capacity.  See Social Security Ruling ("SSR") 85–16 (noting that individuals who have an IQ between 70 and 79 "should ordinarily be able to carry out [simple oral] instructions"); see also Andrade v. Commissioner of Social Sec., 474 Fed. Appx. 642 (9th Cir. 2012) (borderline intellectual function with performance IQ of 72 properly incorporated into residual functional capacity as limitation to simple routine work).  The state agency psychiatrist opined similarly that plaintiff was capable of simple 1-2 step tasks.  AT 255.  Plaintiff testified that the primary basis of her disability claim was a physical impairment, not mental.  AT 33, 35.  Plaintiff's treating physician also opined that plaintiff did not have any mental dysfunction.  AT 297.  There was no error in the ALJ's assessment of plaintiff's mental limitations.

   B. Medical Opinions

Plaintiff further contends that the ALJ did not properly evaluate the record medical opinions.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

---

[2] Plaintiff's performance IQ was assessed as 72 and Dr. Richwerger's Axis II diagnostic impression was borderline intellectual functioning.  AT 229, 231.

1    rejected for "specific and legitimate" reasons that are supported by substantial evidence. Id. at

2    830.  While a treating professional's opinion generally is accorded superior weight, if it is

3    contradicted by a supported examining professional's opinion (e.g., supported by different

4    independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala , 53 F.3d

5    1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

6    any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

7    findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

8    minimally supported opinion rejected); see also Magallanes , 881 F.2d at 751.  The opinion of a

9    non-examining professional, without other evidence, is insufficient to reject the opinion of a

10   treating or examining professional.  Lester, 81 F.3d at 831.

11          Plaintiff asserts the ALJ improperly rejected the opinion of consultative psychological

12   examiner, Dr. Richwerger, who opined that plaintiff had moderate impairment in her ability to

13   complete a normal workday.   This limitation was expressly acknowledged by the ALJ and

14   incorporated in the step three finding.  AT 16.  The ALJ also limited plaintiff to simple 1- and 2-

15   step tasks, which would minimize plaintiff's exposure to conditions affecting her ability to

16   complete a normal workday.  See generally Hoopai v. Astrue, 499 F.3d 1071, 1077 (9th Cir.

17   2007) (moderate impairment in ability to maintain attention and concentration and in ability to

18   complete normal workday not sufficiently severe limitation requiring vocational expert

19   testimony); see also Thomas v Barnhart, 278 F.3d 947 (9th Cir. 2002) (plaintiff with moderate

20   mental limitations could perform unskilled jobs identified by vocational expert).  In addition, the

21   ALJ relied on the testimony of the vocational expert, who opined that even with a moderate

22   limitation in the ability to complete a normal workday, there would still be jobs available to

23   plaintiff as a fast food worker or cannery worker.  AT 41, 44-46.  The ALJ properly credited Dr.

24   Richwerger's opinion.

25          Plaintiff also asserts the ALJ improperly rejected the opinion of plaintiff's treating

26   physician, Dr. Polskiy, who opined that plaintiff was severely limited physically but had no

27   mental dysfunction.  AT 296-298.  The ALJ accorded little weight to this opinion as it was

28   inconsistent with Dr. Polskiy's treatment notes.  AT 18-19.  The ALJ set forth in detail the

1  inconsistencies, noting that the doctor's assessment of pain as 7 out of 10 was inconsistent with
2  the doctor's notations of "no acute distress," plaintiff's "stable" presentation, and the doctor's
3  observations of plaintiff's gait as being within normal limits.  AT 18-19, 213-217, 219, 222, 275,
4  276, 278, 296,313, 317, 319, 320, 322.  In rejecting Dr. Polskiy's opinion, the ALJ instead relied
5  on the opinion of Dr. Sharma, who performed a comprehensive neurological examination of
6  plaintiff.  AT 236-241.  Dr. Sharma opined that plaintiff was limited to lifting 10 pounds
7  frequently and 20 pounds occasionally, with standing and walking limited to 6 hours per day,
8  sitting limited to 6 hours per day, and occasional bending and stooping.  AT 240.  These
9  limitations were incorporated into the residual functional capacity assessed by the ALJ.  AT 17.
10 There was no error in the ALJ's rejection of Dr. Polskiy's opinion in favor of Dr. Sharma's
11 opinion, which relied on independent clinical findings.  Although some of Dr. Sharma's clinical
12 findings mirror those of Dr. Polskiy's and thus are not "different independent clinical findings,"
13 the ALJ appropriately gave little weight to Dr. Polskiy's conclusory opinion which was supported
14 only by minimal and benign clinical findings.

### C. Vocational Expert

Plaintiff challenges the vocational expert's testimony as conflicting with the Dictionary of Occupational Titles.  The United States Department of Labor, Employment & Training Administration's Dictionary of Occupational Titles ("DOT") is routinely relied on by the SSA "in determining the skill level of a claimant's past work, and in evaluating whether the claimant is able to perform other work in the national economy."  Terry v. Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements.  The DOT is a primary source of reliable job information for the Commissioner.  20 C.F.R. § 404.1566(d)(1); see Johnson v. Shalala, 60 F.3d 1428 (9th Cir. 1995) (reliance on the DOT acts as a presumption that may be rebutted by the testimony of a vocational expert); see also Social Security Ruling 00-4p (providing that when there is an apparent unresolved conflict between the vocational expert's testimony and the DOT, the ALJ must clarify the discrepancy).

Plaintiff contends the vocational expert's testimony conflicts with the DOT because the jobs identified by the vocational expert as being consistent with 1- and 2-step tasks require a

1  reasoning level of two.  Under the DOT guidelines, a reasoning level of two entails the ability to
2  "apply commonsense understanding to carry out detailed but uninvolved written or oral
3  instructions."  DOT, Scale of General Education Development (GED) Reasoning Development,
4  Level 2.  Because the level two reasoning level requirement of "detailed" is modified by the
5  qualifier "uninvolved," a limitation to being able to perform only simple 1- and 2-step tasks is not
6  inconsistent with that level.  See Abrew v. Astrue, 303 Fed. Appx. 567, 569-70 (9th Cir. 2008);
7  see also Lara v. Astrue 305 Fed. Appx. 324 (9th Cir. 2008).

8  The vocational expert identified fast food work and cannery work as jobs plaintiff could
9  perform even with moderate mental limitations in concentration, persistence and pace.  AT 46.
10 The expert testified the fast food job base would be eroded by half due to moderate mental
11 impairment but that the available jobs as a cannery worker would not be significantly eroded.  AT
12 46-47.  Because there were 14,500 jobs available to plaintiff even with moderate mental
13 limitations, there was no error in the ALJ's step five finding.

14 CONCLUSION

15 For the reasons stated herein, IT IS HEREBY ORDERED that:

16 1. Plaintiff's motion for summary judgment (ECF No. 15) is denied;

17 2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is granted;
18 and

19 3. Judgment is entered for the Commissioner.

20 Dated:  July 23, 2013

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

24 4 marcu1299.ss